**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

| | |
|---|---|
| AMERICA'S HOME PLACE, INC., ) <br> ) <br>     **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **JAMES E. ELIAS and KATHLEEN E.** ) <br> **KELLY,** ) <br> ) <br>     **Defendants.** ) | **Case No. 5:24-cv-00096** <br> **District Judge Mark E. Walker** <br> **Magistrate Judge Michael J. Frank** |

## <u>DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

Defendants, JAMES E. ELIAS and KATHLEEN E. KELLY ("Defendants") hereby submit their Motion to Dismiss ("Motion") the Complaint [D.E. 1] filed by Plaintiff, AMERICA'S HOME PLACE, INC. ("Plaintiff"), for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In support of thereof, Defendants state as follows:

## <u>MEMORANDUM</u>

## I.    <u>INTRODUCTION AND BACKGROUND</u>

Plaintiff, a residential general contracting company, is no stranger to initiating federal court lawsuits against homeowners. In 2018, Plaintiff filed a copyright infringement action against two first responders from Florida, which Plaintiff lost

on summary judgment.[1] Now, years later, Plaintiff has filed this lawsuit against Defendants, a retired couple from Florida, similarly alleging copyright infringement of an architectural design for a residence. In December 2022, Defendants approached Plaintiff about building their dream home in Gulf County, Florida ("Defendants' Home"). When Defendants initially met with Plaintiff, Defendants provided Plaintiff with drawings and concepts for Defendants' Home. During discussions with Plaintiff that lasted until April 2023, based on Defendants' concepts and drawings, various redlined modifications of plans were circulated for Defendants' input and approval. Ultimately, Defendants never signed a written contract with Plaintiff to build their home, largely due to Plaintiff's questionable pricing practices. Specifically, Plaintiff underquoted the cost to build Defendants' Home by $200,000, which led to the home failing over Defendants' budget provided to Plaintiff from the outset. Therefore, Defendants hired Hinds & Company LLC ("Hinds") to build Defendants' Home.

In September 2023, Hinds began constructing Defendants' Home, based on architectural plans (defined in the Complaint as the "Sublime Plans") prepared by

---

[1] *America's Home Place, Inc. v. Fine Built Constr. of N.C., Inc*., No. 15-CV-00197, 2018 U.S. Dist. LEXIS 13661 (N.A. Ga. 2018) (granting Defendants' motion for summary judgment, finding Plaintiff did not register the derivative plans with the Copyright Office prior to filing suit, and did not show the derivative plans incorporated protectable elements of the registered underlying works such that any copying of the derivative plans necessarily infringed the registered plans).

Sublime Design Service Inc. ("Sublime") in August 2023. In retaliation for Defendants hiring Hinds to build their home instead of Plaintiff, this needless litigation ensued alleging infringement based on alleged similarities between its "Derivative Plans" (as defined in the Complaint),[2] and Defendants' Home. Nearly a year after Defendants reached out to Hinds, and Defendants' Home was almost completely constructed, Plaintiff brought this copyright action falsely alleging that "Defendants' conduct,[3] in causing the Derivative Plans to be reproduced and distributed without [Plaintiff's] permission, and in causing a derivative work to be created using the Derivative Plans without [Plaintiff's] permission, [willfully] infringed [Plaintiff's] copyrights." D.E. 26, ¶ 26.

Plaintiff's Complaint should be dismissed because Plaintiff does not allege: (1) ownership of a valid copyright registration in the Derivative Plans; (2) the protectable elements of the Derivative Plans; and (3) substantial similarity between

---

[2] *See* D.E.1, ¶13. According to the Complaint, the "Derivative Plans" are a derivative work of two registered architectural works owned by Plaintiff: (1) the Blueridge home plans (defined in the Complaint as the "Blueridge Plans"), which has a copyright registration dating back to July 2010, No. VAu 1-034-495 and (2) the Blue Ridge Modern Farmhouse home plans (defined in the Complaint as the "BMFH Plans"), which has a copyright registration dating back to December 2023, No. VA 2-386-145, and is allegedly a derivative of the Blueridge Plans.

[3] Even though Sublime created the Sublime Plans, and Hinds constructed Defendants' Home, only Defendants are being sued by Plaintiff despite the fact that Defendants are individuals who have absolutely no architectural licensure or building experience.

any protectable elements of the Derivative Plans and Defendants' Home (and/or the Sublime Plans).

## II. LEGAL STANDARD ON A MOTION TO DISMISS UNDER RULE 12(b)(6)

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Manchanda v. Google*, No. 16-CV-3350-JPO, 2016 WL 6806250, at \*3 (S.D.N.Y. Nov. 16, 2016) (*citing Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Manchanda*, No. 16-CV-3350-JPO, 2016 WL 6806250, at \*3 (S.D.N.Y. Nov. 16, 2016) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "However, '[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *In re Dispute over Distribution of the Assets*, No. 15-CV-8644-JPO, 2018 WL 2269241, at \*3 (S.D.N.Y. May 17, 2018) (internal citation omitted).

Here, Plaintiff's Complaint should be dismissed for the reasons explained below.

### A. Plaintiff Fails to Allege Ownership of a Valid Copyright Registration in the Derivative Plans, Which is a Prerequisite to Bring a Claim for Copyright Infringement.

4

Registration with the Copyright Office is a precondition for bringing an action for copyright infringement. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010); *Fourth Estate Pub. Benefit Corp. v. Wall—Street.com, LLC*, 856 F.3d 1338, 1339 (11th Cir. 2017); *see also Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 903 (11th Cir. 1986); *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1301 (11th Cir. 2020); 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."). This registration requirement also applies to **derivative works**. *See Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 632 (6th Cir. 2000) ("[B]efore an infringement suit can be sustained based on the derivative work, that derivative work must be registered."), abrogated in part by *Reed*, 559 U.S. at 157.

Plaintiff has attached to it Complaint certificates of registration for two residential construction plans: the Blueridge Plans and the BMFH Plans (collectively, "Plaintiff's Registered Plans"). However, Plaintiff has <u>not</u> attached or alleged that it owns a copyright registration for the Derivative Plans. Therefore, Defendants challenge Plaintiff's ownership of the Derivative Plans, not only because the Derivative Plans are a "joint work" owned equally by Defendants, but for the purposes of this Motion, the <u>Derivative Plans are not registered</u> with the Copyright

5

Office. The Derivative Plans must have been registered separately from Plaintiff's Registered Plans *prior to* filing the instant lawsuit. Otherwise, the unregistered Derivative Plans are protected only to the extent they include protectable elements of Plaintiff's Registered Plans. However, Plaintiff has <u>not</u> alleged if or how the Derivative Plans incorporated original, protectable elements of the underlying, registered works. Rather, in the Complaint, Plaintiff merely argues that "[t]he Sublime Plans are substantially similar to the Blueridge Plans, the BMFH Plans, and the Derivative Plans. This includes, but is not limited to, their overall form, dimensions, window placement, window design, porch placement, roof design, and interior layout." D.E. 1, ¶ 21.[4] This vague and baseless allegation clearly does <u>not</u> meet the statutory requirement of registration as to the Derivative Plans.

Further, the Complaint is void of any allegations that the Derivative Plans incorporate any original, protectable elements of the underlying, registered Blueridge Plans or BMFH Plans, such that any alleged copying of the Derivative

---

[4] "The placement of doors and windows is far more the result of 'generalized notions of where to place functional elements,' which are unprotectable, than the unique, creative combination of otherwise unprotectable elements, which constitutes artistic expression to which copyright protections are afforded." *Pilla v. Gilat*, No. 19-CV-2255, 2022 U.S. Dist. LEXIS 57532, *59 (S.D. N.Y. 2022) (internal citations omitted). To the extent that the placement of the windows and porch is a feature of Plaintiff's copyright claim was not dictated by regulations or the request by Defendants to maximize living area, it was likely dictated by budgetary considerations, which also places it beyond the reach of copyright law's shield. *See id*. at *23.

Plans by Defendants inevitably means infringement of Plaintiff's Blueridge Plans or BMFH Plans. Rather, Plaintiff merely alleges in conclusory fashion that the "Derivative Plans incorporate protected elements of the Blueridge Plans" and BMFH Plans. *Id*. at ¶ 14-15. Plaintiff does <u>not</u> identify what protected elements, if any, are incorporated. The small comparison chart of the exterior elements of the subject plans that Plaintiff does provide in the Complaint is far too small for Defendants to discern what protectable exterior elements are purportedly substantially similar between the plans. *See id*. at ¶ 22. Therefore, Plaintiff has not alleged facts sufficient to establish ownership of a valid copyright to the Derivative Plans or copying of any protectable elements by Defendants of the Derivative Plans.

**B. Plaintiff Fails to Identify What, if any, Protectable Elements of the Derivative Plans are Substantially Similar to Defendants' Home or the Sublime Plans.**

Even if Plaintiff alleged ownership of a valid copyright (which it did <u>not</u> for the Derivative Plans), Plaintiff has failed to allege copying of protectable elements of the Derivative Plans (or any other plans referenced in the Complaint) by Defendants. *See, e.g., Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1318 (11th Cir. 2012). "Copying" may be shown by establishing a defendant's access to the copyrighted work and that the defendant's work is **substantially similar** to the plaintiff's work. *Donald Frederick Evans & Associates, Inc. v. Continental Homes, Inc*., 785 F.2d 897, 903-04 (11th Cir. 1986) (emphasis

7

added). Because it is not contested for purposes of this Motion that Defendants had access to the Derivative Plans, Defendants will focus on whether the Defendants' Home is substantially similar to the Derivative Plans.

In an action involving architectural works,[5] the test for substantial similarity is "whether a reasonable jury could find the competing designs substantially similar at the level of protected expression." *Miller's Ale House*, 702 F.3d at 1325. The protection afforded compilations such as floor plans, however, is "thin." *Id*. That is because "the variety of ways a two-story rectangle can be divided into three

_____

[5] This Court has held that substantial similarity may be assessed at the motion-to-dismiss stage. *See Kmet v. Discovery Communs. LLC*, No. 4:16cv565-MW/CAS, 2017 U.S. Dist. LEXIS 237475 (N.D. Fla. 2017) **(Walker. J.**, dismissing plaintiff's copyright infringement claim for infringement of a business plan for a television show, finding that the only similarities between plaintiffs' works and defendant's television show were elements that cannot be copyrighted, so the works were not substantially similar). For architecture cases specifically, other circuit courts have also held that substantial similarity may be assessed at this stage. *See e.g.*, *Winstead v. Jackson*, 509 F. App'x 139, 143 (3d Cir. 2013) ("[W]here the works in question have been submitted by the parties and are authentic, it is proper for the District Court to consider the similarity between those works in connection with a motion to dismiss."); *Peter F.* Gaito *Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2nd Cir. 2010) ("[If] the works in question are attached to a plaintiff's complaint, it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation."); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (same); *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143-44 (8th Cir. 1989) (same). Here, Plaintiff has attached as exhibits to the Complaint the architectural plans at issue. Accordingly, it is appropriate for this Court to determine whether the works are substantially similar and, therefore, whether Plaintiff can plausibly demonstrate entitlement to relief, in connection with Defendants' Motion to Dismiss.

bedrooms, two baths, a kitchen, a great room or living room, closets, porches, etc. is finite." *Howard v. Sterchi*, 974 F.2d 1272, 1275 (11th Cir. 1992). And so "the substantial similarity analysis must focus [only] on similarity of expression, *i.e.,* material susceptible of copyright protection." *Intervest Constr., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914, 921 (11th Cir. 2008). "[S]pacial depictions of rooms, doors, windows, walls, etc." are not protected. *Intervest*, 554 F.3d at 920. Only "an architect's original combination or arrangement of such elements may be." *Id.* at 919; *see also Home Design Services, Inc. v. Turner Heritage Homes Inc.*, 825 F.3d 1314, 1321  (11th Cir. June 17, 2016) (explaining that the Copyright Act restricts the definition of copyrightable architectural work to <u>exclude</u> "individual standard features"—e.g., "common windows, doors, and other staple building components." (citing 17 U.S.C. § 101 and its legislative history)).

In *Intervest*, for example, the Eleventh Circuit examined a set of architectural house plans and found that, although the plans shared the same overall layout, no reasonable jury could deem them substantially similar at the level of protected expression due to numerous, subtle differences in the plans' otherwise standard architectural features. *Id.* at 921. Common elements among the two floor plans included four bedrooms, a two-car garage, living room, dining room, family room, foyer, kitchen, two bathrooms, a nook, and a porch. *Id.* at 916. But the plans contained significant differences as well, such as different room dimensions,

different garage entrance locations, the inclusion of a "bonus room" above the garage in one model but not the other, different locations of the air conditioning unit and water heater, the inclusion of windows in the garage in one model but not the other, and several differences between the various bedrooms across the two models. *Id.* at 916-17 (quoting the district court's order granting summary judgment in favor of defendant and recognizing these differences as significant). The court, therefore, concluded that no reasonable jury could find the two floor plans at issue "substantially similar." *Id.* at 921.

Likewise, in *Home Design Services*, the court found <u>no</u> infringement despite the plans sharing the same set of rooms, arranged in the same overall layout, the same presence, location, and function of walls, entryways, windows, and fixtures:

> Although HDS-2089 and the Turner plans share the same general layout, this is only because both sets of plans follow the customary four-three split style, as well as the attendant industry standards. Kevin Alter, Home Design's own expert, conceded on cross-examination that HDS-2089's split-bedroom arrangement aligns with industry standards, as does the contiguity of the dining room, breakfast nook, and kitchen. Alter further characterized HDS-2089 as neither "unusual" nor "radically different [from] the many things that are on the market." No one, including Home Design, owns a copyright to the idea of a four-three split style, nor to the industry standards that architects regularly heed to achieve such a split.

825 F.3d at 1324-25.

Here, the problem for Plaintiff is that the Derivative Plans seem to mimic customary layouts for two-story homes as well as industry standards. And "when

floor plans are drawn in a customary style and to industry standards, even **'subtle differences'** . . . can indicate that there is no copyright infringement." *Home Design Servs*., 825 F.3d at 1324 (citing *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 102 n.12, 106-07 (2d Cir. 2014)) (emphasis added). In this case, there are actually over twenty-five subtle <u>and</u> *not-so-subtle*, rather striking differences between the Derivative Plans and Defendants' Home (based on the Sublime Plans), as listed below:

<u>First Floor</u>

1. Derivate Plans have an office and a powder room in the place of two walk-in closets off master bedroom that are shown in the Sublime Plans.
2. Derivate Plans have a linen closet off of the master bathroom lavatory that is absent from the Sublime Plans.
3. Derivative Plans have a closet and utility room but no bathroom in the pantry/utility room, which is present in the Sublime Plans.
4. Derivative Plans have a fireplace in the living room that is absent from the Sublime Plans.
5. Derivate Plans' covered porch is 2' shorter in width (8' instead of 10') than that of the Sublime Plans.
6. Derivative Plans' covered porch decking area is 8' long instead of 4'-6" as shown in the Sublime Plans.
7. Derivative Plan's covered porch includes steps that are absent from the Sublime Plans.
8. Derivative Plans have a first floor that is 47'-8" x 45' instead of 49'-8" x 47' as shown in the Sublime Plans.
9. Derivative Plans have widths and heights of rooms of the first floor that are all different from that shown in the Sublime Plans.

<u>Second Floor</u>

10. Derivative Plans' length of the Second Floor is 45' instead of 41'-8" like that of the Sublime Plans.

11

11. Derivative Plans' loft area is 2" longer than that of the Sublime Plans.
12. Derivative Plans' loft area where the ceiling slops is 1' shorter (17' instead of 18') than that of the Sublime Plans.
13. Derivative Plans' length of the third bedroom number is 12'-8.5" instead of 13' like that of the Sublime Plans.

## Garage

14. Derivative Plans include a 21'-8.5" wall with a door for the storage area that is absent from the Sublime Plans.
15. Derivative Plans' location of the rough in for the sink and toilet is different from that of the Sublime Plans
16. Derivative Plans' total width of the garage is slightly smaller at 35' instead of 36' like that of the Sublime Plans.
17. Derivative Plans' width and length of the storage/garage area is different than that shown in the Sublime Plans.

## Front Elevation View

18. Derivative Plans' upper two B windows are closer to the three A windows than those in the Sublime Plans.
19. Derivative Plans have an extra window on left side that is absent from the Sublime Plans.
20. Derivative Plans have stairs absent from the Sublime Plans.
21. Derivative Plans' front elevation appears lower to the ground than the Sublime Plans.

## Right Elevation View

22. Derivative Plans include stairs on the left side that are absent from the Sublime Plans.
23. Derivative Plans have a door on the right that is in a different location than the door in the Sublime Plans.
24. Derivative Plans include a window absent from the Sublime Plans.

## Left Elevation View

25. Derivative Plans' left staircase is smaller than that in the Sublime Plans.
26. Derivative Plans include a right staircase absent from the Sublime Plans.

If there are any substantial similarities in protectable, individual design elements of the subject plans, Plaintiff has <u>not</u> identified any of them in the Complaint. Instead, Plaintiff only alleges the very "individual standard features" that the Copyright Act does <u>not</u> protect: window placement, window design, porch placement, and roof design. *See* D.E. 1, ¶ 21. However, any similarity owing to Defendants' drawing inspiration from Plaintiff's Derivative Plans is <u>not</u> protectable. *See Sieger Suarez Architectural P'ship, Inc. v. Arquitectonica Int'l Corp.*, 998 F. Supp. 2d 1340, 1351 (S.D. Fla. 2014). Moreover, copyright law does <u>not</u> require wholly independent creation. *Id*. Therefore, Plaintiff has failed to allege that Defendants' Home (based on the Sublime Plans) and the Derivative Plans are substantially similar under the applicable law. As a result, Plaintiff's Complaint warrants dismissal. *See Kmet,* 2017 U.S. Dist. LEXIS 237475 (Walker. J.); *America's Home Place, Inc.*, 2018 U.S. Dist. LEXIS 13661 (on summary judgment finding the differences between the defendant's home and the plaintiff's registered plans were significant enough that no reasonable jury could find them substantially similar at the level of protected expression.). Accordingly, Defendants' Motion to Dismiss should be granted.

### III.  <u>CONCLUSION</u>

For the reasons stated above, Plaintiff's Complaint for copyright infringement fails to state a claim upon which relief can be granted. Therefore, Defendants respectfully request that the Court dismiss the Complaint with prejudice and grant any other relief that the Court deems just and proper.

Dated: July 25, 2024

Respectfully submitted,

*/s/Cleo Suero*
Meredith Frank Mendez
Florida Bar No. 502,235
mmendez@malloylaw.com
Cleo Suero
Florida Bar No. 1,024,675
csuero@malloylaw.com
Vanessa Michaud
Florida Bar No. 1,025,956
vmichaud@malloylaw.com
**MALLOY & MALLOY, P.L.**
6751 N. Federal Highway, Suite 300
Boca Raton, FL 33487
561-243-1000
*Counsel for Defendants*